**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**EXPREZIT CONVENIENCE STORES, LLC, and**
**EXPREZIT MONEY ORDERS, LLC,**

      **Plaintiffs,**

v.                                                                Case No. 3:05cv12/MCR

**TRANSACTION TRACKING**
**TECHNOLOGIES, INC.,**

      **Defendant.**
_____/

## O R D E R

This cause is before the court on the "Amended Renewed Motion to Dismiss Amended Complaint or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a)" filed by defendant Transaction Tracking Technologies ("TTT" or "defendant"). (Doc. 24, supporting documents at docs. 19, 20).  Plaintiffs Exprezit Convenience Stores, LLC, ("ECS"), and Exprezit Money Orders, LLC, ("EMO") (together, "plaintiffs"), timely filed a responsive memorandum in opposition.  (Doc. 28).  The court heard oral argument on the motion and, at the court's direction, the parties filed supplemental memoranda. (Docs. 38, 39).  Upon consideration of the arguments of counsel and relevant case law, for the reasons stated below the court DENIES defendant's motion to dismiss and GRANTS its alternative motion to transfer the case to the United States District Court for the Middle District of Tennessee.

**Background**

The following facts are undisputed.[1] At some time prior to May 2003 ECS entered into discussions with TTT regarding ECS' interest in becoming a licensed money transmitter. ECS operates convenience stores in Florida and other states in which it wished to sell its own money orders and related services, and TTT represented to ECS that it had the necessary hardware, software, and expertise to help ECS establish and run a money transmitter business. On or about May 12, 2003, representatives from ECS and TTT executed a document entitled the "System Proposal" (also, "the agreement" or "the contract") (Doc. 12, Exh. A). Pursuant to the System Proposal ECS agreed to purchase TTT's "Official Item System" for money transmission services; in partial payment of the monies due under this contract, ECS paid TTT the amount of $ 224,672.00 ("the initial payment"). The "Terms and Conditions" section of the System Proposal contains a clause which requires the parties to mediate any dispute arising out of or related to the agreement prior to initiating litigation ("the mediation clause").[2] The System Proposal also contains a provision which states that the laws of the State of Tennessee govern the agreement ("the choice-of-law clause") and a provision which states that the parties consent to jurisdiction and venue in the state or federal courts located in Davidson County, Tennessee ("the choice-of-forum clause" or "forum selection clause").[3]

Concurrently with the execution of the System Proposal, ECS and TTT also

---

[1] The facts recited are taken from plaintiffs' complaint and attachments (doc. 12), plaintiffs' response in opposition to defendant's motion to dismiss or transfer (doc. 28), and plaintiffs' supplemental memorandum (doc. 38). With the exception of the exhibits attached to the complaint, the court has not found it necessary to reference or rely upon any other extrinsic materials submitted by the parties.

[2] Section 11(a) in part provides:
With respect to any dispute arising out of or relating to this Agreement, or the breach thereof, which cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association ("AAA") under its Commercial Mediation Rules . . . before resorting to arbitration, litigation, or some other dispute resolution procedure. . . . (Doc. 12, Exh. A).

[3] In its entirety section 11(c) provides:
This Agreement will be governed by and construed under the laws of the State of Tennessee without reference to conflict of laws principles. For any disputes arising out of this Agreement, the parties irrevocably consent to the personal and exclusive jurisdiction of, and venue in, the state or federal courts with Davidson County, Tennessee. (Doc. 12, Exh. A).

Case No. 3:05cv12/MCR

executed an amendment to the agreement, identified as "Amendment No. 1." Pursuant to Amendment No. 1 ECS and TTT agreed "that the Contract is hereby modified" as follows:

> 1. Exprezit will not be bound to the terms of this Contract unless it is approved as a licensed and bonded Money Transmitter Business in the states in which it operates its convenience stores. ["the termination clause"]
>
> 2. Exprezit will be reimbursed its initial payment as stipulated on the Contract within 30 days of the notification that it has not been approved as a licensed and bonded Money Transmitter as described in (1) above.
>
> 3. This Amendment shall take precedence in the event any terms and conditions of the Agreement conflict[ ] herewith. Except as provided herein, all other terms and conditions of the Contract shall remain in full force and effect and are hereby ratified and confirmed.

(Doc. 12, Exh. B).

After experiencing difficulty in obtaining the surety bonds required for licensing, in May 2004 ECS created the unaffiliated company EMO to act as money transmitter in its stead. On July 13, 2004, representatives of ECS, EMO, and TTT executed a second amendment to the contract ("Amendment No. 2"), which states in pertinent part that EMO rather than ECS was designated the company responsible for attempting to qualify as a licensed and bonded money transmitter; if EMO qualified as a money transmitter, ECS would be obligated under the System Proposal, as modified by Amendment No. 1. (Doc. 12, Exh. C). In addition, TTT would provide assistance to EMO to obtain the needed surety bonds and licenses. In the event EMO did not qualify as a money transmitter TTT would refund the initial payment within thirty days of being notified that EMO had not been approved. Except as modified in Amendment No. 2, the terms and conditions of the System Proposal, as modified by Amendment No. 1, were to remain in full force and effect. (Id.).

Although the parties appear to disagree about the status or results of the efforts to obtain the bonding for EMO which was necessary for it to qualify as a money transmitter, it is undisputed that by mid-September 2004 EMO had not obtained the requisite surety

bonds. By letter dated September 21, 2004, counsel for ECS demanded return of the initial payment of $ 224,672.00. (Doc. 12, Exh. D). The president of TTT responded in a letter dated September 23, 2004, stating that the requisite bonding was close to completion, that it was in the best interests of both parties to "move forward" with the contract, and that he would welcome the opportunity to discuss the matter further. (Id., Exh. E).

In December 2004 plaintiffs brought an action in state court for breach of contract, restitution, conversion, and violation of Florida's Deceptive and Unfair Trade Practices Act. Defendant removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332, following which plaintiffs filed an amended complaint asserting the same claims made in the initial complaint and also seeking the same relief, including restitution, damages, costs, and attorneys' fees.[4] The court granted the parties' joint motion to stay all proceedings pending resolution of defendant's motion to dismiss or transfer. The court also agreed to hear oral argument on the motion, at which it directed the parties to submit supplemental memoranda on the issue of whether the termination clause set forth in Sentence 1 of Amendment No. 1 acted to void all terms of the System Proposal, as modified by Amendments No. 1 and 2, including the terms governing mediation and forum selection.

**Discussion**

<u>Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(3)</u>

The court first considers defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) for lack of venue, based on application of the forum selection clause in the System

---

[4] The style of the complaint filed in the Circuit Court in and for Walton County, Florida, identifies the sole plaintiff as Exprezit Money Orders, LLC, but the introductory paragraphs and allegations also refer to Exprezit Convenience Stores, LLC, as a plaintiff. In its removal papers defendant cited the error but noted that it would not affect diversity jurisdiction. (Doc. 1). Following removal this court granted plaintiffs leave to file an amended complaint correcting the defect (doc. 12), which they described as a scrivener's error (doc. 9). The amended complaint identifies both companies as plaintiffs, the former being a foreign limited liability company with its principal address in New Mexico and the latter being a limited liability company with its principal address in Fort Walton Beach, Florida. Defendant is a Tennessee corporation doing business in Florida.

Proposal, as amended.[5]  In a diversity case in which a forum selection clause designates a domestic forum, the appropriate procedure for seeking enforcement of the clause is a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).[6]  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 28-29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); see also P & S Bus. Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003).  Defendant cites Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285 (11th Cir. 1998), as authority for moving to dismiss for improper venue pursuant to Rule 12(b)(3).  It is true that in Lipcon the Eleventh Circuit held that "motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed.R.Civ.P. 12(b)(3) as motions to dismiss for improper venue." Id. at 1290.  Lipcon, however, involved a choice-of-forum clause which placed venue in England.  The Lipcon court, while noting that section 1404(a) "controls the request of a party in a diversity suit to give effect to a contractual forum-selection clause by transferring the action," id. (citing Stewart Org., Inc., 487 U.S. at 32), found that this section did not apply in the case before it because the forum selection clause at issue required litigation in a foreign forum.  Id.; see also Digital Envoy, Inc. v. Google, Inc., 319 F.Supp.2d 1377, 1379 (N.D.Ga. 2004) (noting that courts in the Eleventh Circuit have generally assumed that Rule 12(b)(3) only applies where transfer is impossible because the forum selection clause requires litigation in a foreign country); Webster v. Royal Caribbean Cruises, Ltd., 124 F.Supp.2d 1317, 1320 (S.D.Fla. 2000) (applying Rule 12(b)(3) because the forum selection clause selected a foreign country as the proper forum).

In sum, because the court concludes that the appropriate procedural mechanism for seeking to enforce a forum selection clause which designates a domestic forum is 28

---

[5] Defendant also argues that, under Tennessee, Florida, and federal law, the complaint should be dismissed because plaintiffs failed to mediate, as required under the mediation clause.  The court does not reach this argument as it concludes that the forum selection clause in the System Proposal, as modified by Amendment Nos. 1 and 2, requires the transfer of this action.

[6] Section 1404(a) provides:: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought." 28 U.S.C.§ 1404(a).

U.S.C. § 1404(a), it DENIES defendant's motion to dismiss pursuant to Rule 12(b)(3) for improper venue.

Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

In P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804 (11th Cir. 2003), the Eleventh Circuit listed eight principles which are applicable to a court's consideration of whether a case should be transferred to another jurisdiction pursuant to a forum selection clause. Among those principles are that "[f]orum selection clauses in contracts are enforceable in federal courts"; "[c]onsideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404(a) (1982), not state law"; and "[t]he validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general."[7] Id. at 807. Additionally, "the court should consider 'the convenience of parties and witnesses' and 'the interest of justice,' with a choice of forum clause 'a significant factor that figures centrally in the district court's calculus.'" Id. Further, "[t]he burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute."[8] Id.

Applying the relevant principles to the instant case, this court concludes that the action should be transferred pursuant to the forum selection clause in the System Proposal, as amended. The court first concludes that the forum selection clause is valid. Plaintiff's argument that the parties "abandoned" the forum selection clause when they

---

[7] The P & S Business Machines, Inc. court cites the Supreme Court's decision in Stewart Org., Inc., 487 U.S. at 28-29, for the latter two principles. Stewart Org., Inc. was an appeal of the decision in Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1068 (11th Cir. 1987) (en banc) (per curiam), aff'd on other grounds, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), in which the Eleventh Circuit determined that interpreting a forum selection clause is a procedural question to be decided under federal law. Accordingly, this court does so in the instant case, notwithstanding TTT's apparent position that Tennessee law should govern the interpretation of this clause.

[8] The other principles outlined by the court in P & S Business Machines, Inc. include that "[b]y enforcing the contractual forum, the Court is not attempting to limit the plaintiff's usual right to choose its forum, but is enforcing the forum that the plaintiff has already chosen"; that financial difficulties in litigating in the selected forum do not alone constitute a sufficient ground for refusal to enforce a valid forum selection clause; and that case law does not suggest that docket congestion, by itself, is a basis for avoiding enforcement of a forum selection clause.

Case No. 3:05cv12/MCR

executed Amendment No. 2 – because Amendment No. 2 repeats the choice-of-law provision but omits the forum-selection clause – is strained and unconvincing. (Doc. 28 at 8).  More importantly, this argument also is not supported by a fair reading of Amendment No. 2, which in part provides that, except as modified therein, the terms and conditions of the System Proposal, as amended by Amendment No. 1, are to remain in full force and effect. (See Doc. 12, Exh. C).  Similarly, Amendment No. 1 states that, except as provided therein, all other terms and conditions of the System Proposal shall remain in full force and effect. (Id., Exh. B).  As quoted above, the System Proposal clearly sets outs in the Terms and Conditions section that "[f]or any disputes arising out of this Agreement, the parties irrevocably consent to the personal and exclusive jurisdiction of, and venue in, the state or federal courts within Davidson County, Tennessee."[9]   (Doc. 12, Exh. A). Nothing in the language of Amendment Nos. 1 or 2 indicates that the forum selection clause should be deemed to have been "abandoned."

Plaintiffs also argue that, in light of the termination clause contained in the System Proposal, as modified by Amendment Nos. 1 and 2, no valid forum selection clause survives. In their supplemental briefs filed following oral argument, both parties discuss Allied Sound, Inc., v. Dukane Corporation, 934 F.Supp. 272, 275 (M.D.Tenn. 1996), and its holding that the termination of a contract does not void a choice-of-forum clause unless the language of the contract explicitly or implicitly indicates such a result.  Defendant submits that is precisely the case here, while plaintiffs argue that the facts of this case distinguish it from Allied Sound, Inc.  According to plaintiffs, the forum selection clause is a general provision contained within the fine-print, boilerplate language of the System Proposal but the termination clause is highlighted in a specially drafted, separate provision.

---

[9] The contractual forum selection clause at issue is properly applied to plaintiffs' claims sounding in tort as well as those sounding in contract. See Stewart Org., Inc., 810 F.2d at 1070 (holding that the forum selection clause at issue encompassed both contract and tort claims); McNair v. Monsanto Co., 279 F.Supp.2d 1290, 1307-08 (M.D.Ga. 2003); Smith v. Prof'l Claims, Inc., 19 F.Supp.2d 1276, 1281-82 (M.D.Ala.1998). See also Bullard v. Capital One, F.S.B., 288 F.Supp.2d 1256, 1258 (N.D.Fla. 2003) (stating, in the context of interpreting an arbitration clause, that "[u]sing ordinary English and contract interpretation principles, I read this clause as a very broad grant, encompassing all actions relating to, deriving from, and under the account or Agreement governing the account.  The agreement does not limit the scope of arbitration in any way; arbitration is not restricted to breach of contract claims or any other class of claim.").

Furthermore, the forum selection clause is a "term of the contract" which at the time of execution of the agreement TTT understood was subject to the clear, unambiguous terms of the termination provision.  Plaintiffs also maintain that enforcement of the termination clause would contradict the termination clause whereas "the parties can comply with the escape clause without doing violence to the remainder of the contract."  (Doc. 38 at 6).  Indeed, plaintiffs argue, TTT "cannot seek to enforce the general terms of a contract that never came into existence due to the specific nature of the mutually agreed escape clause."  (Id. at 7).

The court finds plaintiffs' efforts to distinguish this case from Allied Sound, Inc., unavailing.  Based on the holdings of that case and Advent Elec., Inc. v. Samsung Semiconductor, 709, F.Supp. 843 (N.D.Ill. 1989), which is cited in Allied Sound, Inc., this court concludes that the choice-of-forum clause of the System Proposal was not rendered invalid by the termination of the contract and that the contract, as amended, does not implicitly or explicitly direct a contrary result.  Rather, as noted above, pursuant to the language of the System Proposal, as modified by Amendment Nos. 1 and 2, the choice-of-forum clause applies to "any disputes arising out of this Agreement"  and, other than the amended portions referenced in the amendments, "all other terms and conditions of the Contract shall remain in full force and effect."  (Doc. 12, Exhs. A, B, C).  Moreover, both in state court and this federal court, plaintiffs have alleged breach of a contract which they presently contend "never came into existence," seemingly inconsistent positions which plaintiffs have not adequately explained or attempted to reconcile.  Accordingly, for all of the reasons given above, the court concludes that the forum selection clause, as set forth in  the System Proposal and modified by Amendment Nos. 1 and 2, was not rendered void by the termination clause.

Next, the court concludes the valid choice-of-forum clause should be enforced because ECS and EMO have not met their burden of establishing that "the contractual forum is sufficiently inconvenient to justify retention of the dispute."  P & S Business Machines, Inc., 331 F.3d at 807. In fact, although plaintiffs argue at length that Florida is a proper forum for this dispute,  they do not directly address their burden of showing, under

§ 1404(a), the inconvenience of Tennessee as the forum.  (See doc. 28 at 9).  Plaintiffs do not allege and have not shown that the System Proposal, as amended, was not freely and fairly negotiated by experienced business professionals.  Id.  Furthermore, plaintiffs do not claim that TTT engaged in fraud, duress, misrepresentation, or other misconduct in connection with the execution of the System Proposal or Amendment Nos. 1 and 2.  Id. Plaintiffs contend that Florida is the "more logical" forum choice because both parties maintain offices here.  (Doc. 28 at 12).  Nevertheless, the choice of a Tennessee venue is reasonable given that TTT is a Tennessee corporation and it maintains its principal offices in Nashville, Tennessee.  (Doc. 12, Exh. B).  Plaintiffs also contend that Florida is the more logical forum because it is the "only point of geographic commonality" between the parties, and they complain that the attempt to transfer "seems [to be] nothing more than a transparent attempt to make this litigation as inconvenient as possible for plaintiffs." (Doc. 28 at 10).  Plaintiffs have not, however, attempted to demonstrate that a Tennessee forum in fact would be any more inconvenient for the parties and witnesses than a forum in Florida would be.

A valid forum selection clause is "a significant factor that figures centrally in the district court's calculus," Stewart Org., Inc., 487 U.S. at 29, and should be given controlling weight in all but the most exceptional circumstances.  Id. at 33.  Indeed,  "while other factors might 'conceivably' militate against a  transfer . . . the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors."  P & S Business Machines, Inc., 331 F.3d at 807 (citing In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)).  As plaintiffs in the instant matter have not contended or shown,  and the court does not perceive, that this case presents any "exceptional circumstances" which would warrant refusing to enforce the contractual choice-of-forum clause in this case, the court declines to do so.

**Conclusion**

Having given careful consideration to the parties' contentions and the relevant legal authority, the court concludes that defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) should be DENIED and that defendant's alternative motion to transfer pursuant

to 28 U.S.C. § 1404(a) should be GRANTED.   This cause of action therefore shall be transferred to the United States District Court for the Middle District of Tennessee.

Accordingly, it is ORDERED:

1. Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) (doc. 24) is DENIED and its alternative motion to transfer pursuant to 28 U.S.C. § 1404(a) is GRANTED.

2. The clerk shall TRANSFER this cause of action to the United States District Court for the Middle District of Tennessee, pursuant 28 U.S.C. § 1404(a).

**DONE and ORDERED** this 19th day of October, 2005.

_s/ M. Casey Rodgers_
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**